******************************************

   The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

   All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

   The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

SCOTT CRAWLEY *v.* COMMISSIONER
OF CORRECTION
(AC 41052)

Keller, Elgo and Eveleigh, Js.

*Syllabus*

The petitioner, who had been convicted of possession of narcotics with the
intent to sell by a person who is not drug-dependent, sought a writ of
habeas corpus. He claimed, inter alia, that his criminal trial counsel
rendered ineffective assistance by failing to move to suppress cocaine
that the police found during a search of his bedroom in the residence
of the home in which he had been staying. The petitioner also claimed,
inter alia, that his habeas counsel in a prior habeas action rendered
ineffective assistance by failing to raise that claim of ineffective assis-
tance of trial counsel. The police had found the cocaine after they
obtained the written consent of the owner of the home to search the
petitioner's bedroom. The habeas court dismissed the petitioner's claims
that his trial counsel rendered ineffective assistance, concluding that
they were barred by the successive petition doctrine codified in the
applicable rule of practice (§ 23-29 [3]). The court also determined that
the petitioner failed to prove deficient performance by his prior habeas
counsel or prejudice that resulted therefrom. The court thereafter
granted the petitioner's petition for certification to appeal, and the peti-
tioner appealed to this court. *Held*:

1. The habeas court properly dismissed the petitioner's claims of ineffective
   assistance of trial counsel pursuant to the successive petition doctrine
   in § 23-29 (3); the petitioner's claims were predicated on the same ground
   that was raised in his prior habeas action, the petitioner did not allege
   that his claims were based on newly discovered facts or evidence, and
   he sought the very same relief that he had requested in the first
   habeas action.

2. The petitioner could not prevail on his assertion that the habeas court
   improperly denied his claim of ineffective assistance of prior habeas
   counsel; trial counsel's failure to file a motion to suppress the drugs
   that were found in the petitioner's bedroom predicated on a theory that
   the petitioner exclusively possessed the bedroom and, by extension,
   the cocaine discovered therein, was not objectively unreasonable, as
   trial counsel necessarily had to weigh the motion's limited probability
   of success against its potential impact on a contrary theory of defense
   that was based on the petitioner's nonexclusive use of the bedroom,
   counsel had to be mindful that any suppression hearing testimony by
   the petitioner regarding his exclusive possession of the bedroom could
   be used against him at trial, which made the pursuit of a motion to
   suppress fraught with risk, and because the petitioner did not demon-
   strate deficient performance on the part of his trial counsel, his claim
   of ineffective assistance of prior habeas counsel necessarily failed.

Argued September 16—officially released November 26, 2019

*Procedural History*

Amended petition for a writ of habeas corpus,
brought to the Superior Court in the judicial district of
Tolland and tried to the court, *Sferrazza, J.*; judgment
dismissing the petition in part and denying the petition
in part, from which the petitioner, on the granting of
certification, appealed to this court. *Affirmed.*

*Cheryl A. Juniewic*, assigned counsel, for the appel-
lant (petitioner).

*Laurie N. Feldman*, special deputy assistant state's
attorney, with whom, on the brief, were *Brian Preleski*,

state's attorney, and *Angela R. Macchiarulo*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

ELGO, J. The petitioner, Scott Crawley, appeals from the judgment of the habeas court dismissing in part and denying in part his amended petition for a writ of habeas corpus. He contends that the court improperly rejected his claims of ineffective assistance on the part of both his criminal trial counsel and his first habeas counsel. We affirm the judgment of the habeas court.

This appeal concerns the petitioner's convictions on two counts of possession of narcotics with the intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b). The relevant facts underlying those convictions were set forth in this court's decision on the petitioner's direct appeal. "On September 5, 2002, Joseph Amato, a detective with the Manchester police department who was assigned to the federal Drug Enforcement Administration, informed Thomas Dillon, then a detective with the Wethersfield police department, that the [petitioner] possessed a 'large quantity of cocaine.' Amato informed Dillon of the [petitioner's] known address in Wethersfield and related information concerning [the petitioner's] automobile and license plate number. During his subsequent investigation, Dillon learned that the [petitioner's] operator's license was suspended.

"On September 6, 2002, Dillon conducted surveillance at the Wethersfield address given to him by Amato. Dillon observed the [petitioner] get into his automobile and drive away. At Dillon's request, Christopher Morris, a Wethersfield police officer, stopped the [petitioner's] automobile at a gasoline station and arrested the [petitioner] on a charge of driving with a suspended license. Morris searched the [petitioner] incident to the arrest and found a bag containing 120 smaller bags of cocaine, in a powder mixture, in one of the front pockets of the [petitioner's] pants. The cocaine powder weighed 87.32 grams and consisted of between 17 to 60 percent pure cocaine.

"Later that day, Robert Deroehn, a detective with the Wethersfield police department, arrived at the [petitioner's] known residence in Wethersfield, 7 Spring Street [residence]. There, Deroehn encountered Daniel Hardrick, who owned the residence. Hardrick told Deroehn that the [petitioner] did not live at the residence but that the [petitioner] 'stayed there.' Hardrick signed a consent form, thereby permitting the police to enter and search the home without a warrant. Amato searched the [petitioner's] room and discovered a postal mailing tube that contained two bags of cocaine, in a powder mixture, in the closet in the [petitioner's] room. One bag contained 26.73 grams of cocaine powder separated into thirty-eight smaller bags. Another bag contained 62.60 grams of cocaine powder and consisted of 72 percent pure cocaine. On the basis of evidence concern-

ing, inter alia, the quantities of cocaine possessed by the [petitioner], as well as the quantities of cocaine typically possessed by persons who intend to sell cocaine, the jury reasonably found that the [petitioner] possessed both stashes of cocaine with the intent to sell them." *State* v. *Crawley*, 93 Conn. App. 548, 550–51, 889 A.2d 930, cert. denied, 277 Conn. 925, 895 A.2d 799 (2006). The jury thus found the petitioner guilty on all counts, and the trial court rendered judgments accordingly, sentencing the petitioner to a total effective term of thirty years of incarceration. Id., 550 n.1. From those judgments, the petitioner unsuccessfully appealed to this court.[1] Id., 569.

The petitioner commenced his first habeas action in 2006, alleging that his criminal trial counsel, Attorney Donald Freeman, had rendered ineffective assistance by failing (1) to present evidence that the petitioner was a drug-dependent person and (2) to preserve his right to sentence review. The petitioner was represented by Attorney Hilary Carpenter at the habeas trial, at the conclusion of which the court agreed with the petitioner's latter contention and restored his right to sentence review.[2] At the same time, the court rejected his other claim of ineffective assistance of counsel. From that judgment, the petitioner unsuccessfully appealed to this court. See *Crawley* v. *Commissioner of Correction*, 141 Conn. App. 660, 62 A.3d 1138, cert. denied, 308 Conn. 946, 68 A.3d 656 (2013).

In subsequent years, the petitioner filed four successive petitions for a writ of habeas corpus. The habeas court dismissed each of those petitions.

The petitioner commenced the present habeas action in 2014. In his petition, the petitioner alleged ineffective assistance on the part of Freeman due to his failure (1) to move to suppress the cocaine found in the residence and (2) to provide a competent summation to the jury. The petitioner further alleged ineffective assistance on the part of Carpenter due to her failure to raise those two claims of ineffective assistance of trial counsel in his first habeas action. In answering that petition, the respondent, the Commissioner of Correction, alleged a successive petitions defense, claiming that the petitioner's claims were "premised upon the same legal grounds" that he asserted in his first habeas action. Following a trial, the habeas court, relying on the successive petition doctrine, dismissed the two counts alleging ineffective assistance of trial counsel and denied the petition in all other respects. The court subsequently granted certification to appeal from that judgment, and this appeal followed.

I

The petitioner first claims that Freeman rendered ineffective assistance by failing to file a motion to suppress the cocaine found in the residence. In rejecting

that claim, the court concluded that it was barred by the successive petition doctrine. We agree.

As our Supreme Court has observed, the successive petition doctrine involves the "one situation in which a court is not 'legally required' to hear a habeas petition." *Mercer* v. *Commissioner of Correction*, 230 Conn. 88, 93, 644 A.2d 340 (1994). The doctrine is codified in Practice Book § 23-29, which provides in relevant part: "The judicial authority may, at any time, upon its own motion or upon motion of the respondent, dismiss the petition, or any count thereof, if it determines that . . . (3) the petition presents the same ground as a prior petition previously denied and fails to state new facts or to proffer new evidence not reasonably available at the time of the prior petition . . . ." That rule comports with the teaching of *Negron* v. *Warden*, 180 Conn. 153, 158, 429 A.2d 841 (1980), in which the Supreme Court held that "trial courts may dismiss a second [habeas] application without a hearing only if that application asserts the same grounds and fails to state new facts or proffer new evidence not reasonably available to the petitioner at the hearing on his previous application."

In the present case, the habeas court dismissed the two counts of ineffective assistance on the part of the petitioner's trial counsel pursuant to Practice Book § 23-29 (3), concluding that they were predicated on the same ground that was raised in the petitioner's first habeas action. On our plenary review of the record; see *Gudino* v. *Commissioner of Correction*, 191 Conn. App. 263, 271, 214 A.3d 383, cert. denied, 333 Conn. 924, A.3d (2019); we agree.

This court previously has held that "[a] claim of ineffective assistance of counsel during trial proceedings constitutes the 'same ground' for purposes of [Practice Book] § 23-29 (3), despite changes in the precise underlying specifications of deficient performance, unless such new specifications are based on facts or evidence not reasonably available when the ground was raised in the earlier petition." *Lebron* v. *Commissioner of Correction*, 178 Conn. App. 299, 318, 175 A.3d 46 (2017), cert. denied, 328 Conn. 913, 179 A.3d 779 (2018); see also *Alvarado* v. *Commissioner of Correction*, 153 Conn. App. 645, 651, 103 A.3d 169 ("[w]e . . . note that there is no claim that the third habeas petition contains newly discovered facts"), cert. denied, 315 Conn. 910, 105 A.3d 901 (2014). As in the petitioner's first habeas action, the first two counts of the operative petition here allege ineffective assistance on the part of Freeman. The petitioner has not alleged that those counts are based on newly discovered facts or evidence. Moreover, the petitioner seeks the very same relief that he requested in his first habeas action—namely, vacatur of his conviction. In such circumstances, the successive petition doctrine plainly applies. See *Zollo* v. *Commissioner of Correction*, 133 Conn. App. 266, 279, 35 A.3d

337 (applying successive petition doctrine when "the petitioner's second habeas petition was not founded on a new legal ground, nor does it seek different relief"), cert. granted, 304 Conn. 910, 39 A.3d 1120 (2012) (appeal dismissed May 1, 2013); *McClendon* v. *Commissioner of Correction*, 93 Conn. App. 228, 231, 888 A.2d 183 ("where successive petitions are premised on the same legal grounds and seek the same relief, the second petition will not survive a motion to dismiss unless the petition is supported by allegations and facts not reasonably available to the petitioner at the time of the original petition"), cert. denied, 277 Conn. 917, 895 A.2d 789 (2006). In light of the foregoing, we conclude that the habeas court properly dismissed the counts alleging ineffective assistance on the part of Freeman.

II

The petitioner also challenges the court's determination that he had not proven ineffective assistance on the part of Carpenter, his first habeas counsel, for failing to raise an additional claim of ineffectiveness by Freeman.[3] The successive petition doctrine does not operate as a bar to that claim. As our Supreme Court has explained, in such instances, "the second habeas petition is not predicated on the same issues addressed in the first petition. Although the petitioner must, by necessity, repeat his allegations of trial counsel's inadequacy, there may never have been a proper determination of that issue in the first habeas proceeding because of the allegedly incompetent habeas counsel. The claim of ineffective assistance of habeas counsel, when added to the claim of ineffective assistance of trial counsel, results in a different issue." *Lozada* v. *Warden*, 223 Conn. 834, 844, 613 A.2d 818 (1992). Accordingly, we must consider the merits of the petitioner's claim.

To prevail on an ineffective assistance of habeas counsel claim, commonly referred to as a habeas on a habeas, "the petitioner must prove both (1) that his appointed habeas counsel was ineffective, and (2) that his trial counsel was ineffective. . . . As to each of those inquiries, the petitioner is required to satisfy the familiar two-pronged test set forth in *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]. First, the [petitioner] must show that counsel's performance was deficient. . . . Second, the [petitioner] must show that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable. . . . In other words, a petitioner claiming ineffective assistance of habeas counsel on the basis of ineffective assistance of trial counsel must essentially satisfy *Strickland* twice . . . .

"It is well settled that in reviewing the denial of a habeas petition alleging the ineffective assistance of

counsel, [t]his court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Brewer* v. *Commissioner of Correction*, 189 Conn. App. 556, 561–62, 208 A.3d 314, cert. denied, 332 Conn. 903, 208 A.3d 659 (2019).

On appeal, the petitioner alleges that Carpenter, as habeas counsel, rendered ineffective assistance in failing to pursue an ineffective assistance of trial counsel claim in his first habeas action regarding Freeman's failure to move to suppress the cocaine found in the residence.[4] Specifically, the petitioner alleges that there was a lack of consent for the search due to his exclusive possession of the bedroom in which the cocaine was found. Freeman's failure to file a motion to suppress on that basis underlies the petitioner's claim of ineffective assistance of habeas counsel.

The following additional facts are relevant to that claim. In his operative petition, the petitioner alleged, inter alia, that the search of the residence was conducted "without valid consent . . . ." At the habeas trial, the court was presented with uncontroverted evidence that the petitioner was thirty-seven years old at the time in question and resided at the two bedroom residence with his mother and Hardrick, his stepfather. The court also was presented with documentary and testimonial evidence that Hardrick, acting in his capacity as an owner of the residence, had signed a written consent form prior to the search of the residence conducted on September 6, 2002. A copy of that consent form, which was admitted into evidence, authorized members of the Wethersfield Police Department "to conduct a complete search" of the residence. The court also received evidence that, prior to the petitioner's criminal trial, Freeman had filed a motion to suppress "any and all items seized on September 6, 2002 by the Wethersfield Police Department," arguing that such items constituted the fruits of an unlawful search and seizure conducted as part of an automobile stop on the previous day, which the trial court denied.[5] At his criminal trial, the petitioner's theory of defense was that he lacked exclusive possession of the bedroom in which the cocaine was found.[6]

It is well established that "[a] warrantless search is not unreasonable under either the fourth amendment to the constitution of the United States or article first, § 7, of the constitution of Connecticut if a person with authority to do so has freely consented to the search. . . . The state bears the burden of proving [by a preponderance of the evidence] that the consent was free and voluntary . . . ." *State* v. *Jenkins*, 298 Conn. 209, 249, 3 A.3d 806 (2010). In light of the written consent form

signed by Hardrick, as well as Hardrick's testimony that the Wethersfield police officers received his consent to search the residence, the state likely could have established at a suppression hearing that Hardrick's consent was freely and voluntarily provided.

The proper scope of that consent is another question altogether. On appeal, the petitioner maintains that Freeman rendered ineffective assistance by not pursuing a motion to suppress predicated on Hardrick's alleged lack of authority to consent to the search of his stepson's bedroom.

In *State* v. *Azukas*, 278 Conn. 267, 897 A.2d 554 (2006), our Supreme Court articulated the legal principles that govern third-party consent when a parental relationship is present. The court first observed that "the overwhelming majority of the cases hold that a parent may consent to a police search of a home that is effective against a child, if a son or a daughter, whether or not still a minor, is residing in the home with the parents . . . ."[7] (Internal quotation marks omitted.) Id., 278; accord *United States* v. *Romero*, 749 F.3d 900, 905 (10th Cir. 2014) ("when a child lives with a parent, the parent-child relationship establishes a presumption that the parent has control for most purposes over the property and therefore actual authority to consent to a search of the entire home"); *State* v. *Crumb*, 307 N.J. Super. 204, 243–44, 704 A.2d 952 (App. Div. 1997) ("[e]ven in cases where the child has reached adulthood, courts have been reluctant to find that the son or daughter had exclusive possession of a room in the parent's home").

To overcome that presumption of parental authority, our Supreme Court explained, "the child must establish sufficiently exclusive possession of the room to render the parent's consent ineffective. . . . Factors [to consider] when evaluating whether a child has established sufficiently exclusive possession of the room include: whether the child is paying rent; who has ownership of the home; whether the door to the bedroom is generally kept closed; whether there is a lock on the door; whether other members of the family use the room; and whether other members of the family had access to the room for any reason." (Citation omitted; internal quotation marks omitted.) *State* v. *Azukas*, supra, 278 Conn. 278. The petitioner claims that Freeman rendered ineffective assistance in failing to pursue such a claim. We do not agree.

At the habeas trial, the petitioner submitted testimonial evidence to support his claim that he possessed exclusive possession over the bedroom in question. Specifically, the petitioner testified that his exclusive occupancy of the residence's second bedroom "was generally known" among family members who shared that residence and that he was the only person who could permit access to that bedroom. The petitioner further testified that the bedroom door had a lock, that

he kept the door shut, and that he paid rent. The petitioner also called Hardrick as a witness, who testified that no one was allowed into the bedroom without the petitioner's permission.

At the same time, that evidence of exclusive possession was undercut by testimony at the habeas trial from Hardrick's grandson, Glenn Miller. Contrary to Hardrick's testimony that Miller never slept at the residence, Miller testified that he had stayed at the residence on "one or two weekends" per month. When he did so, Miller testified, he "stayed upstairs" in what he called the "spare" bedroom "[m]ost of the time . . . ." Miller testified that he never obtained the petitioner's permission to do so; rather, Hardrick had provided such permission. The petitioner's claim of exclusive possession also is contrary to the testimony of Detective Deroehn, who obtained Hardrick's consent to search the residence on September 6, 2002. Deroehn testified at the petitioner's criminal trial that Hardrick "told him that the [petitioner] did not live at the residence" and only " 'stayed there' occasionally." *State* v. *Crawley*, supra, 93 Conn. App. 561. For that reason, the habeas court aptly observed that "suppression of the cocaine found in the bedroom was a mere possibility rather than a probability."

In considering the viability of a motion to suppress that is based on a theory of exclusive possession of the bedroom, Freeman necessarily had to weigh its limited probability of success against its potential impact on a contrary theory of defense predicated on the petitioner's *nonexclusive* use of the bedroom. As both Freeman and the petitioner confirmed at the habeas trial, Freeman's objective was to distance the petitioner from the cocaine found in the bedroom. Freeman also had to be mindful that any suppression hearing testimony provided by the petitioner regarding his exclusive possession of the bedroom in question could be used against him at trial for impeachment purposes. See *United States* v. *Jaswal*, 47 F.3d 539, 543–44 (2d Cir. 1995) (holding that defendant's testimony at suppression hearing can be used to impeach defendant's testimony at trial but not to prove guilt); *State* v. *Vega*, 163 Conn. 304, 307–308, 306 A.2d 855 (1972) (defendant's testimony at suppression hearing admissible at subsequent trial as prior inconsistent statement). For that reason, we agree with the habeas court that the pursuit of a motion to suppress predicated on the petitioner's allegedly exclusive possession of the bedroom was one fraught with risk.

"In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. . . . Judicial scrutiny of counsel's performance must be highly deferential and courts must indulge a strong presumption that counsel's conduct

falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Brewer* v. *Commissioner of Correction*, supra, 189 Conn. App. 561–62. On our review of the record before us, we conclude that the petitioner has not overcome that presumption. Freeman's failure to file a motion to suppress predicated on a theory that the petitioner exclusively possessed the bedroom in question and, by extension, the cocaine discovered therein, was not objectively unreasonable in light of the particular circumstances of this case. We therefore conclude that the petitioner has not demonstrated deficient performance on the part of his criminal trial counsel.

In light of that conclusion, the petitioner's ineffective assistance of habeas counsel claim necessarily fails. See *Lozada* v. *Warden*, supra, 223 Conn. 842–43; *Denby* v. *Commissioner of Correction*, 66 Conn. App. 809, 814, 786 A.2d 442 (2001), cert. denied, 259 Conn. 908, 789 A.2d 994 (2002). Accordingly, the court properly denied the petition for a writ of habeas corpus with respect to that claim.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In his direct appeal, the petitioner alleged instructional error, a double jeopardy violation, and that the evidence adduced at trial was insufficient to establish his possession of the cocaine discovered at the residence. *State* v. *Crawley*, supra, 93 Conn. App. 550.

[2] The sentence review division thereafter modified the petitioner's total effective sentence, which resulted in a reduction thereto. See *Crawley* v. *Commissioner of Correction*, 141 Conn. App. 660, 663 n.2, 62 A.3d 1138, cert. denied, 308 Conn. 946, 68 A.3d 656 (2013).

[3] With respect to the petitioner's claims of ineffective assistance of habeas counsel, the habeas court concluded that the petitioner had failed to prove either deficient performance on the part of counsel or prejudice resulting therefrom.

[4] Although he also alleged, in counts two and four of the operative petition, ineffective assistance predicated on Freeman's failure to provide a competent summation to the jury, the petitioner has raised no claim in this appeal with respect thereto. We therefore deem any such claims abandoned. See *Moye* v. *Commissioner of Correction*, 168 Conn. App. 207, 212 n.3, 145 A.3d 362 (2016), cert. denied, 324 Conn. 905, 153 A.3d 653 (2017).

[5] A copy of the motion to suppress and accompanying memorandum of law, dated December 4, 2002, was admitted into evidence at the habeas trial. Freeman likewise confirmed at trial that he recalled "arguing repeatedly that once the [automobile] stop is suppressed and found to be bogus, everything else, including that Wethersfield search," must be suppressed. The record before us also includes a copy of the transcript of the August 12, 2003 hearing on the motion to suppress, at which Freeman argued in relevant part that "if that [automobile] stop was bad, then everything that happened in Wethersfield . . . was a direct result of that [automobile] stop and [is the fruit] of a poisonous tree, and everything is suppressed."

[6] As this court noted in the petitioner's direct appeal, the petitioner argued "that the evidence did not demonstrate that he exclusively possessed the premises where the narcotics were found." *State* v. *Crawley*, supra, 93 Conn. App. 562. In his testimony at the habeas trial, the petitioner likewise confirmed that Freeman's argument at trial was that the state could not connect him to the cocaine discovered in the residence.

[7] With respect to familial relationships, we note that our Supreme Court has concluded that the consent of a stepmother, as memorialized on a signed consent form, to search her stepson's bedroom was valid. See *State* v. *Jones*, 193 Conn. 70, 77–81, 475 A.2d 1087 (1984).